IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDON D. MIDKIFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:20-cv-01962-TWP-MJD |
| | ) |
| NAVIENT SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Navient Solutions, LLC f/k/a Navient Solutions, Inc. ("NSL"), by counsel, for its Response in Opposition to Plaintiff's Motion to Compel states as follows:

**I.   INTRODUCTION**

Plaintiff Brandon Midkiff ("Midkiff") has transformed a typical dispute about the proper scope of discovery into a game of "gotcha," continually moving the ball and creating issues where none exist, at times appearing to willfully misunderstand the clear, complete responses provided by NSL. In now seeking a vast array of sanctions against NSL, Midkiff also sidesteps the mandatory meet-and-confer process established by the pertinent federal and local rules, raising issues that are not ripe for the Court's consideration. This alone precludes any sanctions against NSL. His complaints basically fall into two categories: (1) issues that were actually disputed between the parties, to which NSL has fully and properly responded prior to the instant Motion (i.e., amended discovery responses, responses to Request No. 1 and Interrogatory No. 13, e-mail searches, privilege log); and (2) issues Midkiff failed to meaningfully address in any meet-and-confer or discovery conference (i.e., NSL's responses to Plaintiff's Third Request for Production

1

[Doc. 89-24] (Request Nos. 24, 27, 32 and 33)), which are not ripe for the Court, or the instant Motion. The Court should deny Midkiff's Motion to Compel in full, and award NSL its attorneys' fees incurred responding to the Motion.

## II.  MIDKIFF'S SCATTERED APPROACH TO ADDRESSING DISCOVERY DISPUTES

Similar to Midkiff's brief in support of the instant Motion, his identification of discovery issues and disputes has lacked clarity and consistency. Here, Midkiff seeks relief related to specified discovery requests [Doc. 88 at 1), but lists additional requests in his brief, without argument to articulate the relevant issues [Doc. 89 at 14-17.] Such approach has hampered NSL's ability to separate Midkiff's actual concerns from his potential posturing, so that it can respond to legitimate disputes. Even so, NSL has persisted in attempting to understand, and respond to, Midkiff's disputes. The appropriate context of the parties' relevant discovery activities is below.

### A.  Midkiff Misconstrues Discovery Timeline

#### 1.  *NSL Provides Initial Production, Without Objection by Midkiff*

On November 23, 2020, Midkiff served his First Set of Discovery Requests, which included interrogatories and document requests. Prior to NSL's responses to the First Set of Discovery Requests, Midkiff served his Second Set of Discovery Requests on December 22, 2020, which also included interrogatories and requests for production. On January 19, 2019 and January 29, 2019, NSL responded to all pending sets of discovery requests. [Doc. 89, 89-4, -5, -6 and 07.]

NSL's written responses to Midkiff's First and Second Sets of Discovery Requests included several objections to the scope of Midkiff's overbroad document requests, including but not limited to his requests for: all policies related to FCRA compliance, responding to identity theft complaints, and "the accuracy and integrity of information furnished to all consumer reporting agencies," without temporal limitation; copies of the full employment file for every NSL employee

2

or contractor who had any involvement in the investigation or communications with Midkiff; and all documents "which relate to your periodic review and update" of such policies, without temporal limitation. [Doc. 89-6, 89-7.] During this time period, Midkiff never sought to meet and confer with NSL about any allegedly incomplete responses or improper objections.

On February 16, 2021, NSL produced its initial document production, consisting of more than 1,000 pages of documents. [Doc. 89 at 4.] In the weeks both prior to and following NSL's document production, Midkiff did not raise a single concern or objection to any of NSL's written responses, objections, or document production.

### 2. *Midkiff's Counsel Attempts First Discovery Dispute Conference in the Midst of First Deposition*

On March 11, 2021, Midkiff conducted his first deposition in the case, deposing NSL Fraud Investigator Matthew Schatz. [*Id.* at 4.] As of the time of Schatz's deposition, NSL had served its written responses to Midkiff's first and second sets of discovery requests, wherein NSL objected to the broad scope of Midkiff's requests for NSL's internal policies and procedures. [*Id.* at 4-5; Docs. 89-6 and 89-7, Response Nos. 1, 5, 10, 20, 21, 22, 23.] In other words, as of March 11, 2021, Midkiff was well aware that NSL had objected to his overbroad requests and had not produced any policy and procedure documents in response to them.[1]

Despite this knowledge, Midkiff made no attempt to meet-and-confer to address the scope of discovery prior to Schatz's deposition, as Rule 37 and Local Rule 37-1 require. Instead, throughout the deposition, Midkiff made repeated demands that NSL immediately supplement its

---

[1] To be clear, <u>NSL never suggested that it had no internal policies and procedures</u>, as Plaintiff repeatedly incorrectly implies in his brief. [*See* Doc. 89 at 22-23.] Rather, NSL objected to the scope and relevance of Plaintiff's broad discovery requests. (*Id.;* Doc. 89-6 at 2, Response No. 1.] Further, the parties were already discussing a deposition of a 30(b)(6) representative, who would be positioned to provide testimony regarding the relevant policies and procedures, which NSL presented as a more proportional approach to the discovery sought. In fact, NSL offered to provide its 30(b)(6) representative for deposition before fact witness Schatz, but Midkiff declined.

document production, without any meaningful opportunity for counsel to confer with their client regarding Midkiff's renewed requests. [Doc. 89-1 at 3-11.] In other words, rather than engage in a good-faith discussion about any documents Midkiff believed should have been produced in response to his written discovery requests, Midkiff used Schatz's deposition as an opportunity to ambush NSL and conduct an improper "meet-and-confer" throughout the deposition itself.

Notwithstanding Midkiff's unorthodox and counterproductive approach to the meet-and-confer process, NSL worked diligently over breaks throughout Schatz's deposition to provide Midkiff with the procedure document at issue. [Doc. 89-1 at 14-15.] As Midkiff acknowledges, NSL indeed produced the document in question during the deposition. [Doc. 89 at 22, 23.] While Midkiff seems to scoff at only one document being produced, it was the only document he requested and that was at issue in the deposition. (And, as discussed in further detail below, NSL has since produced voluminous internal policy and procedure documents—all of them produced prior to the instant Motion to Compel.)

### 3. *NSL Continues to Confer with Midkiff Following Schatz Deposition*

#### a. **Teleperformance Philippines**

Following the first day of Schatz's deposition, Midkiff requested additional documents he believed should supplement NSL's prior responses, to which NSL responded, and also asked NSL to identify the individuals who processed the automated consumer dispute verifications ("ACDVs") relevant to his FCRA claim. [Exhibit 25 at 1-2.] On March 19, 2021, NSL informed Midkiff that the ACDVs were handled by outside contractors in the Philippines; NSL objected to Midkiff seeking their depositions through NSL; but NSL would nonetheless obtain names and contact information, if known, to allow Midkiff to subpoena them. [Exhibit 25 at 2.] NSL's prompt response belies Midkiff's insinuation that NSL was trying to "hide" Teleperformance or

the names of the contractors, which NSL provided on April 2, 2021. Midkiff did not express any of the outrage he now claims, but simply stated that he would like to depose the head of NSL's Credit Bureau Processing Team, and any team members who played a role in processing the ACDVs at issue. [*Id.*]

### b.   Formal Meet-and-Confer

After additional discussion, on April 14, 2021, Midkiff sent a letter taking "the liberty of summarizing our respective positions below within a list of the specific documents we still seek." [Exhibit 26.] Framed as such, NSL reasonably construed such letter to contain a comprehensive list of the outstanding discovery issues. Midkiff listed: (1) general concern with "boilerplate" objections and lack of identification of documents being withheld, without identifying particular requests/interrogatories; (2) need for a privilege log; (3) documents responsive to Request for Document Nos. 1 and 10[2], described as "[c]opies of all manuals, training materials, policies and procedures, memos, or policy directives created or used by Navient or Navient's contractors from 2019 to today in relation to its obligations under the FCRA as set forth in the Complaint"; and (4) documents responsive to Request for Production No. 2, described as "[a]ll email correspondence and notes by or between Navient and Teleperformance Philippines regarding the loan at issue." (*Id.*) Midkiff's letter asked for times either on April 15 or 16 to revisit the issues.

Confusingly, however, the same day, NSL received an e-mail from Magistrate Judge Dinsmore's courtroom deputy, Geeta DeVellen, scheduling a discovery call with the Judge for April 19, 2021, and asking for the parties to provide their respective positions by April 16, 2021, with copies to each other. [Exhibit 27.] NSL responded to Ms. DeVellen's e-mail, sharing that,

---

[2] During the Court's discovery conference, Midkiff acknowledged Request No. 10 is no longer at issue.

given Midkiff's April 14th letter, a conference with the Judge may be premature, and requesting a later date for a potential conference. [*Id.*]

On April 16, 2021, NSL responded to Midkiff's letter, by: (1) agreeing to revise its responses to provide additional clarification about whether documents had been withheld; and (2) agreeing to produce its FCRA policies and procedures concerning investigation of disputes, correction of reporting, and that relate to allegations of identity theft, (including any relating to a quality control review in such instance) for September 2019-September 2020 (covering the entire period in which NSL received ACDVs relating to Midkiff), and confirming no additional responsive training materials existed for the relevant time period. [Exhibit 28.] As to Teleperformance, NSL informed Midkiff that Schatz had not provided any testimony that he corresponded with Teleperformance in the handling of disputes relating to Midkiff, and objected that the e-mail search sought by Midkiff would require NSL to undertake guesswork and a fishing expedition. (*Id.*) At the same time, however, NSL informed Midkiff that, short of such a fishing expedition, NSL had searched for responsive communications with Teleperformance and had not located any documents. (*Id.*) NSL informed Midkiff that it would produce any other supplemental documents before April 23rd if able to do so, and invited Midkiff to discuss the issues further if needed. (*Id.*)

However, on April 19, 2021, Midkiff stated he intended to proceed with a discovery conference with the Court, expanding and altering the areas of dispute. [Exhibit 29.] NSL informed Midkiff that it considered only the issues framed in Midkiff's April 14, 2021 as properly ripe for discussion with the Court, as such "expansion would violate the letter and spirit of S.D. Ind. L.R. 37-1." (*Id.*) NSL thereafter provided its dispute position to the Court as instructed. [Exhibit 30 (exhibits omitted).]

    *4.*  *Midkiff Moves Forward with Court Conference Without Further Discussion, and Without Alerting NSL to Issues to Be Raised with Judge*

NSL never received anything from Midkiff representing his position for the discovery conference—as the Court required him to provide. On April 21, 2021, the Court held a discovery conference and, due to Midkiff's "gotcha" tactic, covered topics beyond the scope of Midkiff's April 14, 2021 letter, contrary to the requirements of S.D. Ind. L.R. 37-1.

    *5.*  *NSL Responds to Third Request for Production, Never the Subject of a Discovery Conference*

On March 15, 2021, Midkiff served his Third Request for Production ("Third Requests"), to which NSL responded on April 14, 2021, with responsive documents provided on April 23, 2021. Because the Court conference was conducted on April 21, 2021, no responsive documents had yet been produced for the Third Requests and thus were not the subject of the conference (but discussion of NSL's production is nevertheless included in Midkiff's instant Motion).

    *6.*  *Midkiff Fails to Identify Any Issues with NSL's Supplemental Production Before Alerting NSL He Was Filing Motion to Compel*

Although NSL was in the process of preparing its supplementation (as promised even before the Court conference), on April 23, 2021, Midkiff e-mailed hostile accusations to counsel, including NSL "dragging" out and "slow walking" discovery, and "hiding the ball" and that all Midkiff got from the undersigned was "obstinance." [Exhibit 31.] Midkiff also refused NSL's proffer of a stipulation that it would not call Teleperformance employees as witnesses at trial, or use testimony from them to support any motion briefing (which he had previously requested). [*Id.*] Ultimately, Midkiff rebuffed NSL's request to discuss the parameters of the additional searches discussed during the Court conference: "You're still playing your game. It's not on us to identify the people who could have responsive emails. It's on you. Have you done anything to determine who those people might be?" [Exhibit 32.] Realizing that a collegial conversation would not be

possible, NSL responded, including: "We are not putting this 'on you,' rather trying to determine a reasonable universe so that we can conduct the appropriate search. Again, this was my attempt to short-cut any future disagreements. If Plaintiff does not wish to discuss, we will do the best we can." [*Id*.] Instead of providing input, Midkiff simply continued a barrage of questions. [*Id*.]

NSL supplemented its production on April 23, 2021 (as agreed in its April 16, 2021 letter, prior to the Court conference), noting that it would provide revised discovery responses and additional supplementation the following week. [Exhibit 33.] On April 26, 2021, and April 29, 2021, NSL provided additional updates regarding its production efforts. [Exhibits 34 and 35.] NSL also clarified for Midkiff that its account records also included notations provided by Teleperformance contractors, and identified the relevant page numbers. Without any meaningful input from Midkiff, NSL's further supplementation efforts included:

- Obtaining relevant policies and relevant procedures for ACDV responses and identity theft investigations, including each version applicable within the time period of September 2019-September 2020;

- Inquiring whether Teleperformance maintained any separate notes about the ACDVs, confirming none, and thus no documents to produce;

- Searching the "pend queue" applicable to ACDVs, to determine whether any of the ACDVs at issue had been escalated for questions, confirming no escalations, and thus no documents to produce;

- Conducting extensive e-mail searches using "Midkiff" or any of the control numbers of the ACDVs at issue for September 1, 2019-September 30, 2020 of the following custodians within three (3) key groups, searching for communications regarding Midkiff's fraud claim or responses to the relevant ACDVs:

- o Fraud Department – Investigators and their chain of command for fraud investigations, including:

    - Melissa McCollum
    - Matthew Schatz
    - Jian Chi
    - Jayson Bocanegra
    - Melissa Boyd
    - Angela Keith
    - Brad Jones

- o Credit Bureau Management (Chain of command reporting up to Mr. Jones, relating to ACDV Responses)

    - Nicole Garnett
    - Maryann Patruskey
    - Marcelle Edwards-Perry

- o Teleperformance Supervisors who supervised the representatives responding to the ACDVs (searching NSL e-mail addresses provided to them)

    - Karen Kate Pranada
    - Marvin John Golisonda
    - Sheryll Cledera

Rather than discuss any remaining issues or questions about NSL's production to understand the scope of what NSL had searched, or opine on what he felt was missing from NSL's extensive searches, Midkiff informed NSL he was filing the instant Motion.

### III. NSL'S DISCOVERY RESPONSES ARE PROPER.

Of the discovery issues ripe before the Court, Midkiff takes issue with: (1) NSL's initial disclosures as to Teleperformance and identifying policies and procedures; (2) Interrogatory No. 13; and (3) Document Request No. 1.

#### A. Initial Disclosures

Midkiff claims NSL failed to properly identify Teleperformance Philippines in its initial disclosures, and failed to identify various policies and procedures, in violation of Fed. R. Civ. P. 26. Neither instance violates Rule 26. To the contrary, Rule 26 requires a party to identify only

9

individuals "likely to have discoverable information…that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Similarly, a party is required to disclose only documents the party "may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(ii).  At the time of NSL's initial disclosures, neither Teleperformance nor NSL's actual policy and procedure documents met this definition.

### 1.  Teleperformance Philippines

Plaintiff's Motion to Compel argues NSL should be sanctioned because it "did not identify Teleperformance or the Teleperformance representatives who conducted its Section 1681s-2(b) investigations," wrongly describing Teleperformance's employees as a "key witness or witnesses." [Doc. 89 at 8, 13.]  But as Midkiff readily acknowledges, NSL provided the names of the Teleperformance employees who responded to the ACDVS more than two months ago, on April 2, 2021 (*Id.* at p. 10.), and identified Teleperformance generally even earlier, on March 19, 2021.  In other words, Midkiff is moving for an order to compel and for sanctions related to information he already possesses.  The Court should deny the Motion as it relates to Teleperformance because there is simply nothing left to compel.  Midkiff has the information he claims to need, and he is free to move forward with that information as he sees fit.[3]

Even more, however, Midkiff's argument that NSL somehow "hid the ball" regarding Teleperformance is premised on a fundamental mischaracterization of the relevance of the Teleperformance employees to this case.  Indeed, when he originally learned about Teleperformance, Midkiff did not express any of the outrage he now shares.  The Teleperformance

---

[3] Notably, despite Midkiff's insistence that Teleperformance and its employees are "key" to this litigation, he has made no effort to subpoena any Teleperformance employee for deposition in the two-plus months since NSL identified the company and provided the names of the persons who handled the ACDVs.

employees are not "key witnesses," and they did not conduct the fraud investigation activities at issue in this case. Rather, NSL's substantive fraud investigations were conducted entirely by employees within NSL's Fraud Investigation team, who have also been disclosed.

Teleperformance's role in the ACDV process is to receive ACDV disputes received from the consumer reporting agencies ("CRAs") and respond to them. In cases (like this one) where NSL has already conducted an internal investigation of a consumer's direct claim and concluded the debt is the consumer's obligation, and the ACDV fails to present any new evidence, a furnisher may rely upon a previously-conducted internal investigation of a consumer's direct dispute in discharging its obligations under the FCRA. *See e.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) (holding that furnisher reasonably relied on conclusions of internal investigation and had no duty to reinvestigate); *Boyd v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 172965, at *17–18 (S.D. Ga. Dec. 14, 2016) (holding that furnisher reasonably relied on its prior internal findings and noting that "FCRA does not force furnishers to endless ride the reinvestigation merry-go-round").

Indeed, Midkiff's own Motion to Compel acknowledges that NSL—not Teleperformance—conducted the fraud investigation: "these investigations were performed by Teleperformance, *incorporating the investigative findings of NSL's Fraud Investigation Department*. . . ." [Doc. 89 at 2 (emphasis added).]

Quite simply, NSL would have no reason to confirm exactly who conducted the ACDV review in its initial disclosures because NSL would not plan to use any of these individuals (employee or contractor) to support its defenses in this case. In fact, NSL explicitly stipulated that it had no intention of calling or using testimony from any of these non-party witnesses, as Midkiff readily acknowledges. [Doc. 89 at 11.] With these representatives going through numerous

11

ACDVs in the course of a day, it is highly unlikely they would have any personal knowledge or recollection of Midkiff's disputes, at any rate.

### 2.     Policy and Procedure Documents

Midkiff also complains that NSL did not identify any specific policy or procedure documents in its initial disclosures. Once again, however, Midkiff mistakenly assumes that NSL planned at the outset to use such policy and procedure documents to support its defenses. Rather, NSL's corporate representative can ably testify about NSL's policies relating to ACDV responses, and NSL could have proceeded accordingly. For example, in *Ball v. Navient Solutions, LLC*, Case No. 1:16-cv-853-WKW-DAB (M.D. Ala.), cited by Midkiff, NSL submitted a declaration of NSL's corporate representative in support of its motion for summary judgment, describing the applicable policies and procedures, through declaration testimony. [Doc. 89-19 at 7-8.] Where such policies and procedures have now been produced, and NSL's 30(b)(6) representative will doubtless be questioned on them, NSL may elect or need to use them in this litigation, but Rule 26 did not mandate their earlier production.

Under Rule 26, supplementation is only required "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Here, all of the challenged information was subsequently provided to Midkiff, and no supplementation is required under the Rules. Nor would any sanction be warranted in any event, where NSL's actions were justified by Rule 26, and Midkiff is not harmed, nor can he show any bad faith or willfulness in not disclosing the documents at an earlier date. *See ArcelorMittal Indiana Harbor LLC v. Amex Nooter, LLC*, 320 F.R.D. 455, 461-63 (N.D. Ind. 2017) (declining to award sanctions for failure to disclose document earlier, when party did

not intend to use the document to support its claims or defenses when initial disclosures were served). The Court should deny Midkiff's Motion.

### B.     Interrogatory No. 13

Midkiff's dispute regarding NSL's fulsome response to Interrogatory No. 13 is illusory. He incorrectly claims NSL failed to identify "all persons who participated" in the fraud investigations related to Midkiff. [Doc. 89 at 17.] In its Amended Response, NSL specifically named Matthew Schatz, Jian Chi and Melissa McCollum as the fraud investigators who worked on the disputes. [Doc. 89-9 at 4-5.] Though he attempts to argue that the individuals responding to Midkiff's ACDVs should have been named here (even though NSL had already disclosed them in separate correspondence), this contention rings hollow. It was NSL's Fraud investigators—named in the response to Interrogatory No. 13—who were the individuals who participated in the fraud investigations. The Teleperformance contractors responding to the ACDVs at issue played no role in that review. NSL therefore fully answered exactly the question that Midkiff asked, and the Court should deny Midkiff's Motion.

### C.     Request No. 1

Despite the clear evidence to the contrary, Midkiff continues to insist that he was somehow deceived about the existence of written policies and procedures responsive to Request No. 1. Nothing could be further from the truth. NSL never informed Midkiff that it had no responsive documents. Rather, NSL's initial objections were based on the scope of the request, and issues relating to proportionality and burden. However, even before the April 21, 2021 discovery conference, NSL agreed to produce FCRA and fraud policy, procedure and training documents for the relevant time period. As set forth above, following the Court discovery conference, NSL engaged in a comprehensive search for responsive e-mails, and clarified for Midkiff that it did not

13

have any additional responsive notes relating to the ACDV responses, other than what was contained in the ACDVs themselves and the account notes. The Court should deny the instant Motion on this ground as well. *See Holleman v. Aramark Corp.,* Case No. 1:11-cv-323-TWP-DKL, 2013 WL 2872235, *2 (S.D. Ind. Jul. 25, 2013) (party's disbelief that "no documents exist or that all documents have been provided is insufficient to compel further production"); *Terry v. County of Milwaukee*, Case No. 17-CV-1112-JPS, 2018 WL 1411234, *1 (E.D. Wis. Mar. 21, 2018) (denying motion to compel with "nothing left to compel").

## IV. MIDKIFF IS NOT ENTITLED TO SANCTIONS

Midkiff's approach to the discovery disputes in this case leaves the impression he is more interested in the dispute than the resolution. This Court should grant NSL its attorneys' fees for having to respond to Midkiff's frivolous Motion.

### A. NSL Has Fully Addressed the Ripe Disputes Regarding Midkiff's First and Second Discovery Requests.

As detailed above, Midkiff's issues relating to his First and Second Sets of Discovery Requests—e.g., the identification of Teleperformance employees, the production of policy and procedure documents, the production of emails, the production of a privilege log—were already in the process of being addressed before the instant Motion, and some even before the Court-led discovery conference. In particular:

1) In its April 16, 2021 letter, NSL agreed to supplement its production with policies and procedures, and a privilege log, and to clarify its written discovery responses [Exhibit 28];

2) Following the discovery conference with the Court on April 21, 2021, NSL provided amended written discovery responses to remove certain objections, and these written responses expressly indicate where NSL has withheld responsive

       documents or refuses to conduct an overbroad and unduly burdensome search[4] [Doc. 89-8, -9, -10, -11, -24];

3) NSL identified the involvement of a non-U.S. contractor with the ACDVs at issue on March 19, 2021, and identified the name of Teleperformance Philippines and the relevant Teleperformance employees on April 2, 2021;

4) NSL has produced all responsive policies and procedures, and clarified there are no additional materials that were used for training during the relevant time period;

5) NSL has conducted a search for responsive emails—a search which Midkiff expressly refused to participate in or provide any feedback on—and only a small handful of marginally-relevant emails were located after an exhaustive search, and all of them were produced; and

6) NSL produced a privilege log detailing all communications withheld on the basis of privilege prior to Midkiff filing the Motion to Compel.

In other words, NSL has made substantial efforts over the past two months to supplement its written discovery responses and address any purported discovery concerns discussed at the April 21, 2021 conference. There is nothing left to compel as to the disputes from Plaintiff's First and Second Sets of Discovery Requests. NSL may have disagreed with Midkiff about the proper scope for discovery, but did not conceal or hide information or key witnesses from him, and the cases cited by Midkiff in support of sanctions are clearly inapposite.

Plaintiff's request for sanctions with respect to NSL's responses to these requests should be denied.

### B. Midkiff Failed to Comply with Local Rule 37-1 Before Moving to Compel Responses to the Third Requests.

Local Rule 37-1 obligates parties to make good faith efforts to resolve all discovery disputes and to contact the Magistrate Judge to schedule a discovery conference prior to filing a motion to compel:

---

[4] Again, Midkiff's suggestion that NSL must state "whether and what documents are being withheld" is nonsensical where NSL's objection is to conducting an overly broad and unduly burdensome search for documents in the first place. Midkiff insists on misunderstanding the clear distinction between NSL's objections.

15

**(a) Required Actions Prior to Court Involvement.** Prior to involving the court in any discovery dispute, including disputes involving depositions, counsel must confer in a good faith attempt to resolve the dispute. If any such dispute cannot be resolved in this manner, counsel shall contact the chambers of the assigned Magistrate Judge to determine whether the Magistrate Judge is available to resolve the discovery dispute by way of a telephone conference or other proceeding prior to counsel filing a formal discovery motion. When the dispute involves an objection raised during a deposition that threatens to prevent completion of the deposition, any party may recess the deposition to contact the Magistrate Judge's chambers.

**(b) Requirements of Motion to Compel.** In the event that the discovery dispute is not resolved at the conference, counsel may file a motion to compel or other motion raising the dispute. Any motion raising a discovery dispute must contain a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties. The court may deny any motion raising a discovery dispute that does not contain such a statement.

S.D. Ind. L.R. 37-1(a)-(b).

With respect to Midkiff's Third Requests, the instant Motion fails to include "a statement setting forth the efforts taken to resolve the dispute, including the date, time, and place of any discovery conference and the names of all participating parties," as required by S.D. Ind. L.R. 37-1(b). And for good reason: no such "meet and confer" or discovery conference ever took place.

As outlined above, the April 21, 2021 discovery conference did not include *any* discussion of the Third Requests. Instead, Midkiff failed to comply with Local Rule 37-1. Thus, the instant Motion and request for sanctions with respect to the Third Requests should be denied outright. *See e.g.*, *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-01020-RLY-MJD, 2014 U.S. Dist. LEXIS 107684, at *5 (S.D. Ind. Aug. 5, 2014) (denying motion to compel where party failed to request status conference, as required by local rules and case management plan); *Goodman v. Shalimar Invs., LLC*, Case No. 4:14-cv-00079-SEB-TAB, 2016 U.S. Dist. LEXIS 95129, at *2 (S.D. Ind. July 21, 2016) (denying motion to compel where party failed to meet and confer or contact the Magistrate Judge prior to filing its motion); *Ford v. Marion County Sheriff's Dept.*, Case No. 1:15-cv-01989-WTL-DML, 2017 U.S. Dist. LEXIS 230719, at *8 (S.D. Ind. Sept. 22,

2017) ("The court will not grant [plaintiff's] relief with respect to the documents because she did not comply with her pre-filing obligation under Rule 37 to meaningfully confer about a discovery dispute or the court's requirement to request a discovery conference . . . before filing a motion to compel."). Indeed, as this Court found in *Slabaugh*, prematurely filing a motion to compel without seeking a discovery status conference is "utterly unjustified," and warranted an award of attorneys' fees to the non-moving party. *Slabaugh v. LG Elecs. U.S., Inc.*, Case No. 1:12-cv-01020-RLY-MJD, 2014 U.S. Dist. LEXIS 161687, at *4–5 (S.D. Ind. Nov. 17, 2014). Rather than an award of sanctions against NSL, an award in its favor for the time spent responding to Midkiff's unripe disputes is appropriate.

Even if a response was proper, however, Midkiff's explanation of his issues with NSL's responses to the Third Requests demonstrate the propriety of NSL's objections. In Request Nos. 24, 27, 32, 33, and 34, Midkiff seeks broad categories of documents to which NSL objected as to scope, burden, and/or proportionality. Such objections are proper, and NSL is not required to simultaneously list the documents that have not been produced (or for which a search has not been conducted). *See Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991) (party objecting to discovery request for overbreadth not required to identify and list documents sought to withhold). In any event, the parties had no chance to discuss such objections, because Midkiff failed to engage and prematurely rushed to motion practice.

### V.     CONCLUSION

In short, Midkiff's conduct during discovery in this case does not reflect a party attempting to obtain reasonable discovery. Rather, Midkiff has created unnecessary disputes, confusion and rancor where none need exist.

WHEREFORE, Defendant Navient Solutions, LLC respectfully requests the Court DENY Plaintiff's Motion to Compel, and grant all other relief the Court deems appropriate, including an award of attorneys' fees in NSL's favor for its costs incurred in having to respond to the Motion.

Respectfully submitted,

By: /s/ *Bonnie L. Martin*
Bonnie L. Martin, IN 20248-18
Justin A. Allen, IN 31204-49
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:   317.916.9076
*bonnie.martin@ogletree.com*
*justin.allen@ogletree.com*

Attorneys for Defendant
Navient Solutions, LLC f/k/a Navient Solutions, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Travis W. Cohron
Clark Quinn Moses Scott & Grahn, LLP
320 N. Meridian St., Suite 1100
Indianapolis, IN 46204
tcohron@clarkquinnlaw.com

Guerino Cento
CENTO LAW
5666 Carrollton Ave.
Indianapolis, IN 46220
cento@centolaw.com

*/s/ Bonnie L. Martin*

47407729.1