UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRANDON G. MIDKIFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01962-TWP-MJD |
| | ) | |
| NAVIENT SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Plaintiff's motion to compel [Dkt. 88]. The Court, being duly advised, **GRANTS IN PART** and **DENIES IN PART** the motion to the extent and for the reasons set forth below.

**I. Background**

Plaintiff alleges in this case that his brother fraudulently obtained a student loan from Defendant using Plaintiff's identity. When the loan payments were not made, Defendant began reporting the loan as delinquent to various credit reporting agencies. Plaintiff alleges, *inter alia*, that Defendant willfully (or negligently) violated the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681, *et seq*., by not conducting a reasonable investigation and refusing to remove the loan from Plaintiff's credit files after Plaintiff reported that he was the victim of identity theft and the delinquent loan was not his.

At issue in the instant motion are Plaintiff's discovery requests designed to obtain evidence of the reasonableness (or lack thereof) of Defendant's investigation of the ten automated consumer dispute verifications ("ACDVs") Defendant received from the credit reporting agencies in response to Plaintiff's fraud reports. As explained by Plaintiff,

> Evidence relevant to the reasonableness of a furnisher's[1] Section 1681s-2(b) investigation,[2] and whether its failures constitute willfulness, can best be summarized as:
>
> > Actual Investigations. Evidence related to the actions actually taken by a furnisher's investigators, how those actions may differ from a furnisher's written procedures, and the adequacy of those written procedures here, relevant information includes the identification of persons who conducted the investigations and the information they considered while doing so.
> >
> > Testing & Quality Assurance. Evidence related to a furnisher's methodology for determining reasonableness; dispute information tracking including statistical rates of error and how often it concludes identity theft has occurred or reporting is inaccurate; and information related to any relevant changes or alterations to its written procedures.

[Dkt. 89 at 1-2 (no citation provided) (footnotes added).]

## II.  Applicable Law

The law applicable to discovery disputes is well-settled and has been summarized by the Court as follows:

> A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). This burden cannot be

---

[1] Defendant is a "furnisher" under the FCRA because it furnished information about the delinquent loan to the credit reporting agencies.

[2] This provision of the FCRA requires a furnisher to conduct an investigation when it receives notice from a credit reporting agency that a consumer disputes a debt.

> met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors, Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. August 2, 2006) (internal citations omitted). Moreover, in considering matters of proportionality, Rule 26(b) directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).
>
> When a party raises objections to discovery requests, the objecting party bears the burden to explain **precisely** why its objections are proper given the broad construction of the federal discovery rules. *In re Aircrash Disaster Near Roselawn, Inc. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997); *see also Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). Thus, general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such. *See Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"); *Burkybile*, 2006 WL 2325506, at *9 (overruling boilerplate objections made generally and without elaboration). . . . As other Seventh Circuit district courts have noted, "[m]aking general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied." *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008). . . . Further, when the objecting party raises nonspecific, boilerplate objections without clearly explaining how the request is objectionable, courts should overrule the objections in favor of broad discovery, pursuant to the federal rules. *Novelty*, 265 F.R.D. at 375 (holding that boilerplate objections without explanation are deemed waived); *McGrath v. Everest Nat. Ins. Co.*, 625 F.Supp.2d 660, 671 (N.D. Ind. 2008) (staying the objecting party must specify why the discovery request is improper); *In re Aircrash*, 172 F.R.D. at 307 (noting that the federal discovery rules should be construed liberally and broadly).

*Barker v. Kapsch Trafficcom USA, Inc.*, 2020 WL 3618945, at *1 (S.D. Ind. July 1, 2020). In addition,

> [a] party resisting discovery on the basis of undue burden must show with specificity that the discovery requests a[t] issue are objectionable. *See, e.g. Fair Oaks Dairy Farms,* 2012 WL 3138108 at *3 ("Dairy Farms has not pointed to a

3

> single discovery request that it alleges would be overly burdensome. . . . Dairy Farms simply states that the discovery would be burdensome and expensive without greater detail. The insufficiencies are fatal to its request."); *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC,* 2007 WL 1164970 at *4 (N.D. Ind. Apr. 18, 2007) (quotation omitted) ("[I]f a party is to resist discovery as unduly burdensome, it must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome."). This showing typically requires affidavits or other evidence supporting a party's assertions of burden. *See, e.g., Jenkins v. White Castle Mgmt. Co.,* 2014 WL 3809763 at *2 (N.D. Ill. Aug. 4, 2014) ("What is required is affirmative proof in the form of affidavits or record evidence."); *Burton Mech. Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D. Ind. 1992) ("An objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

*Whole Woman's Health All. v. Hill*, 2019 WL 10886889, at *3 (S.D. Ind. Oct. 7, 2019). These general principles govern the Court's consideration of the parties' arguments.

### III. Discussion

As an initial matter, the Court notes that the task of addressing the dispute at hand has been stymied by the manner in which the issues have been presented by Plaintiff. There is a reason that the adage "[j]udges are not like pigs, hunting for truffles buried in briefs" has been quoted so frequently in opinions since it was coined by the Seventh Circuit three decades ago in *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). On occasion, lawyers present disputes in such a way that the court is simply unable to untangle them, at least without expending far more of the taxpayers' resources than is warranted. Such is the case here. Plaintiff in this case argues—vehemently—that Defendant's conduct in responding to his discovery request has been willfully deficient and therefore deserving of harsh sanctions. However, the Court's role in a discovery dispute is to determine whether a party has failed to satisfy its obligations under the applicable rules. Here, that means whether Defendant has complied with its initial disclosure obligations and whether it has provided appropriate responses to the

discovery requests served by Plaintiff. Unfortunately, with a few exceptions, which are addressed below, Plaintiff does not point to specific discovery requests that Defendant has failed to respond to or specific objections improperly made by Defendant.[3] Instead, Plaintiff has attempted to paint an overall picture of what he terms Defendant's unfair discovery tactics. The Court has no doubt that Plaintiff has been frustrated by the course of discovery in this case. It is unclear how much of that frustration has been caused by obdurate behavior by Defendant, as Plaintiff argues, and how much has been caused by unreasonable and/or shifting expectations of Plaintiff, as Defendant argues. It was Plaintiff's obligation to make it clear. In the future, Plaintiff would be better served by eschewing rhetoric and extended metaphors and instead using the allotted pages to lay out the facts and the application of the relevant law to those facts in a straightforward and dispassionate manner, with precise citations to the record and the relevant statutes and case law.

### A. Initial Disclosures

Turning to the specific arguments articulated by Plaintiff, one such argument is that Defendant failed to comply with its initial disclosure obligations. A party's initial disclosure obligations are governed by Federal Rule of Civil Procedure 26(a)(1)(A), which provides, in relevant part:

> **(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

---

[3] This is particularly true with regard to the issue raised in Plaintiff's supplemental brief [Dkt. 99]. Plaintiff states that documents recently produced by Defendant in response to Plaintiff's fifth set of document requests "were clearly responsive to several of the requests for production at issue [in the instant motion], including Request Nos. 1 and 37," [Dkt. 99 at 3], Plaintiff makes no attempt to articulate how that is the case, and the fifth set of document requests clearly seek a broader universe of information than Requests Nos. 1 and 37.

> **(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> **(ii)** a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

There appear to be two main facets to Plaintiff's problem with Defendant's initial disclosures. The first relates to the individuals who processed the ACDVs Defendant received from the credit reporting agencies in response to Plaintiff's fraud reports. Defendant contracts with an outside company, which is located in the Philippines, to handle its ACDVs. Plaintiff complains that Defendant did not provide the identity of that company and the names of the individuals who were involved with the ACDVs related to Plaintiff until April 2, 2021.[4] Plaintiff argues the "[p]lainly, this information should have been contained in [Defendant's] initial disclosures, disclosed via one or more of [Defendant's] responses to [Plaintiff's] written discovery requests, or perhaps even informally to save all involved a tremendous amount of time and energy." [Dkt. 89 at 10.] However, as Defendant correctly points out, Defendant was not obligated to provide this information in its initial disclosures, as Defendant does not intend to use any of the individuals in question or the information they have as witnesses in this case.[5] Nor is

---

[4] Defendant responded to Plaintiff's first set of interrogatories on January 19, 2021, and his second set of interrogatories, as well as his first two sets of document requests, on January 29, 2021.

[5] At times, Plaintiff's briefs suggest that Plaintiff views Rule 26(a)'s initial disclosure obligations as akin to a prosecutor's obligation to turn over all *Brady* (that is, exculpatory) materials to the defense. Defendant simply was not required to include in its initial disclosures all information or

the failure to provide information "informally" a violation of the discovery rules, however inefficient and frustrating to the opposing party that may be. And, in any event, Plaintiff now has the information, so there is nothing to compel.

Plaintiff also complains that Defendant's initial disclosures did not provide sufficiently specific information regarding its own policies and procedures related to investigating claims of fraud and identity theft by a consumer. *See* [Dkt. 89 at 8] (Defendant "identified only a generic 'Corporate Representative' without detail about the knowledge this witness possessed" and, "[a]s for its own records, [Defendant] disclosed: 'Relevant and non-privileged account records, including any disputes received from consumer agencies.'"). Defendant responds that Plaintiff "mistakenly assumes that [Defendant] planned at the outset to use such policy and procedure documents to support its defenses. Rather, [Defendant's] corporate representative can ably testify about [Defendant's] policies relating to ACDV responses, and [Defendant] could have proceeded accordingly." [Dkt. 12.] While this is a bit cagey, as Defendant does not unequivocally state that it had no intention to use the documents in question, but rather that it **did not necessarily** intend to do so, it appears that Plaintiff has now obtained the policy and procedure documents that Defendant may use to support its defenses. With regard to those policies and procedures, then, there is again nothing to compel with regard to Defendant's initial disclosures.[6]

---

documents that it has that are relevant to the issues in the case. No matter how relevant the document, if it does not fall into the category of documents that Defendant "may use to support its claims or defenses," Defendant is not required to produce it unless it is responsive to one of Plaintiff's document requests.

[6] Plaintiff's arguments regarding additional documents and information he asserts Defendant has failed to produce in response to his discovery requests are addressed below.

Finally, Plaintiff argues:

> What [Defendant] clearly meant to do in this case was to present a corporate representative *who would remain unnamed until trial* and who would testify generally about [Defendant's] investigation procedures (without identifying them specifically or producing the procedures themselves), about the reasonableness of [Defendant's] investigation procedures (without producing any documents related to those procedures, including any documents related to monitoring, testing, data tracking, training or quality assurance) and about what [Defendant] did or did not do in processing [Defendant's] Section 1681s-2(b) investigations (without disclosing Teleperformance or its representatives or any connection between Teleperformance and [Defendant's] Fraud Investigation team). This plan was a blatant attempt to avoid [Defendant's] Rule 26(a) obligations because in order to do any of those things, [Defendant's] corporate witness, its *still unnamed* corporate witness, would have to "use" the procedures, information about the procedures and the records of Teleperformance in order to gain the knowledge that witness intends to offer. That *unnamed* witness would have no choice but to "use" this information because there is simply no way that witness could know any of those things without learning that information from some source—either another person at [Defendant] or Teleperformance or the records themselves.
>
> How, for example, could [Defendant's] corporate representative "testify about [Defendant's] policies related to ACDV responses" without having seen those procedures?  How could that representative know anything about the reasonableness of those procedures without knowing that information from [Defendant's] records, including the procedures themselves and all the information related to reasonableness such as the documents related to monitoring, testing, data tracking, training or quality assurance which Plaintiff has been attempting to discover since November 2020?  How could this representative know anything about training or quality assurance without documents related to training and quality assurance?  The answer is that this *unnamed* corporate representative could not possibly know any of those things without *using* in some way the procedures themselves and the information [Defendant] collects about those procedures.  This is [Defendant's] gotcha game on full display.

[Dkt. 94 at 8-9.]  This rhetoric is unhelpful.  Plaintiff ignores the fact that Plaintiff is entitled to depose Defendant about its policies, via the process set forth in Federal Rule of Civil Procedure 30(b)(6), and thus pin down Defendant's position with regard to that issue (and any other relevant issue).  Defendant simply was not required to decide at the outset of the case what individual(s) it might put on the stand to testify on its behalf.  Nor was Defendant required in its

8

initial disclosures to identify every individual who has any knowledge of its relevant policies and procedures. Defendant's identification of a "generic" corporate representative in its initial disclosures was sufficient to satisfy its obligations. There was no risk that, without more specific information, Plaintiff would be unable to request and obtain the relevant discovery to which he was entitled.

It appears that Plaintiff's purpose in raising Defendant's alleged failure to comply with its initial disclosure obligations was not to obtain any information, but rather to obtain "harsh sanctions" pursuant to Federal Rule of Civil Procedure 37(c)(1) for failure to comply with Rule 26(a). [Dkt. 90-2 at 8.] Plaintiff recognizes that

> [t]he Seventh Circuit [has] outlined several factors to help districts courts make Rule 37 determinations: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date."

[Dkt. 90-2 at 7] (quoting *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019)). However, Plaintiff fails to make any attempt to apply these factors to the specific facts of this case, other than to argue that Defendant has acted in bad faith. The reality is that, even if Defendant should have been more forthcoming regarding its relevant policies and procedures in its initial disclosures, Plaintiff has obtained the documents via the discovery process and therefore will not be surprised thereby. The Court has extended the discovery and dispositive motions deadlines so Plaintiff has ample time to conduct any necessary follow-up discovery. *See* [Dkt. 98]. The trial date has been continued to September 2022. [Dkt. 105.] The alleged initial disclosures failures pointed to by Plaintiff simply do not warrant sanctions.

Plaintiff's argument that Defendant has committed "similar transgressions" as those committed by the sanctioned parties in *Hunt v. Hubler Chevrolet, Inc.*, No. 1:18-cv-01505-RLY-

MJD, and *Guzman v. Bridgepoint Educ., Inc.,* 305 F.R.D. 594 (S.D. Cal. 2015), is wholly without merit. Even Plaintiff's own descriptions of those cases makes that abundantly clear. Plaintiff acknowledges that *Hunt* involved "destruction of material evidence, providing false statements concerning material facts and evidence, and withholding material evidence" that "render it materially distinct from the instant matter." [Dkt. 90-2 at 13, 14.] In fact, the discovery misconduct in *Hunt* is in no way similar to Defendant's conduct in this case.

In *Guzman*, the court excluded the declaration of a witness that was submitted during class certification briefing because the court found that the party had hidden the identity of the witness from the opposing party until the deadline for class certification discovery had passed. The party had not disclosed the witness in her initial disclosures or in response to interrogatories and, in fact, had confirmed that she was not withholding any additional witnesses. Those facts are simply not analogous to the situation here, in which Plaintiff has received the information in question well in advance of the close of discovery.

To the extent that Defendant failed to fully comply with initial disclosure obligations in this case, the failure was simply not sanctionable.

### B. Specific Discovery Requests

With regard to Defendant's responses to Plaintiff's discovery requests, Plaintiff states that "because the number of [Defendant's] responses that remain deficient and littered with boilerplate objections are so numerous, it is difficult to adequately address each within the page constraints of this memorandum. Accordingly, [Plaintiff] presents this table which addresses all deficient responses." [Dkt. 90-2 at 15.] While it might have been difficult for Plaintiff to adequately address each of the alleged deficiencies in his brief, it is even more difficult, if not impossible, for the Court to resolve an issue that is not adequately presented to it. And, in any

case, "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011). Accordingly, the Court's review is limited to those discovery requests that Plaintiff has adequately addressed in his briefs, rather than simply listed in a chart.

### 1. Interrogatory No. 13

Plaintiff's Interrogatory No. 13 reads as follows:

> Identify all ID theft investigations you conducted related to the account at issue in this case, including the "previously conducted ID theft investigation" which you reference in your July 15, 2020 letter to Plaintiff. For each ID theft investigation identify:
>
> > 13.1. The date on which you began the investigation;
> > 13.2. The date you concluded the investigation;
> > 13.3. All documents related in any way to the investigation;
> > 13.4. All persons who participated in the investigation;
> > 13.5. All internal email correspondence related to the investigation or sent to or among the persons who participated in the investigation; and
> > 13.6. All notes contained within any database system in which you store information regarding the investigation and/or the account at issue in this case.

[Dkt. 89-5 at 6-7.] Defendant initially responded to this interrogatory as follows:

> [Defendant] objects that this Interrogatory seeks the identification of witnesses, documents, and substantive information, and therefore counts as multiple discrete subparts rather than a single interrogatory. [Defendant] further objects to the extent this Interrogatory calls for information protected by the attorney-client privilege, work product doctrine, or other privilege or protection against disclosure.
>
> Subject to and without waiving the foregoing objections, [Defendant] responds that information responsive to this Interrogatory, including relevant dates of [Defendant's] investigation activities, may be ascertained by reference to [Defendant's] fraud investigation files and account notes. Pursuant to Fed. R. Civ. P. 33(d), [Defendant] directs Plaintiff to these documents, which [Defendant] is producing in discovery in response to Request No. 4.

11

*Id.* at 7. On May 5, 2021, shortly after the April 21, 2021, discovery conference, Defendant

amended its response as follows:

> [Defendant] responds that information responsive to this Interrogatory including relevant dates of [Defendant's] investigation activities, persons who participated, and relevant documents and notes, may be ascertained by reference to its fraud investigation notes and files, which [Defendant] produced in response to Request No. 4 (NSL000862-NSL000954, NSL001069-NSL001114). Pursuant to Fed. R. Civ. P. 33(d), [Defendant] directs Plaintiff to these documents. As detailed in the fraud investigation notes and files, the names of the fraud investigators who worked on the disputes at various points included Matthew Schatz, Jian Chi, and Melissa McCollum. [Defendant] further responds that it is searching for internal email correspondence related to said investigations and will produce such emails, if any are located.

[Dkt. 89-9 at 5.]

Plaintiff complains that Defendant's initial response did not include documents that "identified Teleperformance or any of its representatives[;] nor did the documents include the ACDVs." [Dkt. 90-2 at 18.] However, Plaintiff then concedes that Defendant eventually did produce the records that contain that information, albeit "101 days after Plaintiff served Interrogatory No. 13 and 177 days after [Defendant] served its Initial Disclosures." *Id.* at 19.

With regard to Defendant's amended response, Plaintiff states the following:

> Again, this response is far from responsive. The documents within NSL000862-NSL000954 consist of canceled distribution checks issued to the Midkiff's brother, the alleged identity thief, a LexisNexis report about Midkiff, a LexisNexis report about Midkiff's brother, a "Borrower's Certification signed by Midkiff's brother but not by Midkiff and other related loan documents, a copy of Plaintiff's dispute letter to Trans Union (which was attached as an image to one of the ACDVs [Defendant] received from Trans Union), the Cut-and-Paste Document, a direct dispute letter from Plaintiff to [Defendant], a letter from [Defendant] responding to Midkiff's direct dispute, a change of address letter from Plaintiff's brother to [Defendant], and a copy of the Loan Application which Midkiff maintains was forged by Midkiff's brother. With respect to the documents within NSL000862-NSL000954, none of the documents identify Section 1681s-2(b) investigations, the persons who conducted those investigations, Teleperformance records, notes or email. Similarly, the documents within NSL001069-NSL001114 are screenshots of assignment notes for the Fraud

> Department investigations (which Plaintiff demanded [Defendant] to produce to replace the inaccurate Cut-and-Paste Document) and have nothing to do with and do not identify anyone involved with any Section 1681s-2(b) investigations, the persons who conducted those investigations, Teleperformance records, notes, or email. Finally, the witnesses identified in [Defendant's] amended response, Matthew Schatz, Jian Chi, and Melissa McCollum, were the [Defendant] representatives who work in [Defendant's] Fraud Department and who processed the Fraud Department investigations. None of these three individuals processed any Section 1681s-2(b) investigations.

[Dkt. 90-2 at 20-21.]

Plaintiff's argument is based on a disconnect between Plaintiff's view of the meaning of "all ID theft investigations you conducted related to the account at issue in this case" and Defendant's reading of the phrase. In Plaintiff's view, the information is critical because Plaintiff believes that the Teleperformance Representatives performed the investigation that Defendant was required to perform pursuant to section 1681s-2(b) of the FCRA when it received the ACDVs relating to Plaintiff. In Defendant's view, the Teleperformance employees did not perform any investigation; rather, "Teleperformance's role in the ACDV process is to receive ACDV disputes received from the consumer reporting agencies ('CRAs') and respond to them" and, in this case, Defendant had already conducted an internal investigation of Plaintiff's claim of identity theft, so there was no need for (and no requirement of) any additional investigation by Teleperformance. [Dkt. 92 at 11] (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1160 (9th Cir. 2009) (holding that furnisher reasonably relied on conclusions of internal investigation and had no duty to reinvestigate); *Boyd v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 172965, at *17-18 (S.D. Ga. Dec. 14, 2016) (holding that furnisher reasonably relied on its prior internal findings and noting that "FCRA does not force furnishers to endless ride the reinvestigation merry-go-round")). Thus, Defendant responded to Interrogatory No. 13 by identifying the documents relating to its internal investigation and providing the names of its

13

employees who conducted that investigation.  Defendant did not include any Teleperformance documents because, in Defendant's view, anything that Teleperformance did was not part of the "ID theft investigations [Defendant] conducted related to the account at issue in this case."  *See* [Dkt. 92 at 13] ("It was [Defendant's] Fraud investigators—named in the response to Interrogatory No. 13—who were the individuals who participated in the fraud investigations. The Teleperformance contractors responding to the ACDVs at issue played no role in that review.").

The Court understands why Plaintiff may wish to confirm that Teleperformance did not perform an independent investigation and provide Defendant with additional, relevant information,[7] and, as noted above, Plaintiff now has information regarding the processing of the ACDVs by Teleperformance.  However, Defendant's omission of information regarding Teleperformance from its response to Interrogatory No. 13 was reasonable, given Defendant's position that Teleperformance's actions were not part of Defendant's "ID theft investigations." Plaintiff's motion to compel therefore is **DENIED** with regard to Interrogatory No. 13.

   *2. Document Request No. 1*

Plaintiff's Document Request No. 1 reads as follows:

---

[7] Indeed, Plaintiff refers to Defendant's "claims that the 'substantive' fraud investigations were performed by its Fraud Investigation team" as "pure fantasy."  [Dkt. 94 at 10.]  Nothing pointed to by Plaintiff suggests to the Court that that is the case; rather, Plaintiff's position appears to be based on his belief that processing an ACDV is the equivalent of a fraud investigation and, more specifically, that only the actions of an individual tasked with processing an ACDV can satisfy a furnisher's investigation obligation under section 1681s-2(b).  The Court expresses no opinion regarding the viability of this argument as a legal matter, but notes that, if Plaintiff is correct, given that Defendant has unequivocally stated that the Teleperformance employees **did not conduct a fraud investigation**, it is unclear what additional information Plaintiff would need to demonstrate that, under Plaintiff's reading of the statute, Defendant failed to fulfill its obligation under section 1681s-2(b).

14

>   A copy of all manuals, memorandum, notices, training materials, or other guidance created, provided, or in effect between August 2019 [and today] relating to [Defendant's], or [Defendant's] agents and subcontractors, policies and procedures to assure compliance with the Fair Credit Reporting Act, including without limitation its procedures for preventing and correcting the reporting of credit information involving identity theft and to correct credit reports or credit files that include credit information relating to identity theft.

[Dkt. 89-6 at 2.] Defendant responded as follows:

>   [Defendant] objects that the scope of this Request is overly broad, unduly burdensome, and disproportionate to the parties' needs in discovery. In particular, this Request broadly seeks [Defendant's] "policies and procedures" without regard for whether such policies and procedures have any relevance to the parties' claims or defenses in this litigation. [Defendant] further objects to the extent this Request seeks documents protected by the attorney-client privilege, work product doctrine, or other privilege or protection against disclosure. [Defendant] objects that this Request is duplicative of other requests made herein.

*Id.* Defendant's amended response reads as follows:

>   [Defendant] objects that the scope of this Request is overly broad, unduly burdensome, and disproportionate to the parties' needs in discovery. In particular, this Request broadly seeks [Defendant's] "policies and procedures" without regard for whether such policies and procedures have any relevance to the parties' claims or defenses in this litigation. [Defendant] responds that it has produced its policies and procedures for investigating claims of identity theft or fraud from September 2019 through September 2020, at NSL001060-NSL001068 and NSL001350-NSL001750, and those relevant portions of the same were used as the training materials responsive to this Request during the same time frame. [Defendant] further responds that to the extent Plaintiff requests [Defendant] search for every document in its possession, custody, or control that could plausibly be considered "notices, training materials, or other guidance" related to FCRA, such a request is overly broad, unduly burdensome, and disproportionate to the parties' needs in discovery, and [Defendant] will not conduct such a search.

[Dkt. 89-10 at 1-2.][8]

---

[8] Plaintiff argues that Defendant's response does not comply with the requirement of Federal Rule of Civil Procedure 34(b)(2)(C) that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Plaintiff is technically correct; Defendant should have unequivocally stated that it was withholding documents on the basis of its

Plaintiff's motion to compel is **GRANTED** as to this document request. Defendant has not supported its objections based on undue burden and proportionality, as Defendant has provided no information regarding what the burden of production would be. Further, Defendant has not demonstrated that the request is overly broad, in that Defendant has not identified any of its "manuals, memorandum, notices, training materials, or other guidance . . . to assure compliance with the Fair Credit Reporting Act" that would not satisfy the broad definition of relevance in the discovery context.[9] Accordingly, Defendant's objections to Document Request No. 1 are **overruled**. Defendant shall provide a complete and unequivocal response to the document request.

That said, Plaintiff's reading of the request is overbroad. The request asks for a "copy of all manuals, memorandum, notices, training materials, or other guidance created . . . to assure compliance with the Fair Credit Reporting Act." That does not encompass, for example, communications regarding the review and approval of Defendant's ACDV Procedure; it

---

objections. As a practical matter, however, the amended response makes it clear that this is the case. To the extent that Plaintiff suggests that the rule required Defendant to identify the documents that it was withholding, that argument is without merit. It is the fact of withholding, not the specific documents being withheld, that must be identified. The reason is simple; if no documents are actually being withheld, the objections are essentially meaningless and any further disputes regarding such objections are pointless. Plaintiff also argues that "it is important to note [Plaintiff] was only able to discover the existence of *any* written procedures because [Defendant's employee] Mr. Schatz was logged into [Defendant's] computer system during his first deposition." [Dkt. 90-2 at 23.] The suggestion that Defendant **hid** the existence of any written policies by objecting to producing **all** of its written policies is, quite frankly, absurd.

[9] Plaintiff complains that Defendant "fail[ed] to produce a complete list of all procedures despite being instructed to do so during the Discovery Conference." [Dkt. 90-2 at 22.] The Court suggested that providing a list of procedure manuals to Plaintiff so that Plaintiff could determine which procedures he was interested in would be compromise between what Plaintiff requested—all such procedures—and what Defendant had offered, which is to provide the manuals Defendant determined to be relevant. Plaintiff's argument that Defendant's failure to follow this suggested compromise is itself a violation of the discovery rules is incorrect.

encompasses only the actual procedure that was approved and implemented. *Cf.* [Dkt. 90-2 at 24] ("Presumably, [Defendant's] review and approval of this procedure would have created discoverable information about the review and approval process, the standards used in that process, the data considered in that process."). To respond to this document request, Defendant is required to produce the documents that set forth its policies and procedures regarding compliance with the FCRA and any training materials it uses to train its employees with regard to those policies and procedures. Defendant's response to this document request does not have to include any communications about the creation, approval, amendment, implementation, or compliance with those policies and procedures.[10]

### 3. *Plaintiff's Third Request for Production*

The remainder of the document requests about which Plaintiff makes specific arguments are not properly before the Court. The discovery conference at which Plaintiff was granted leave to file the instant motion was held on April 21, 2021. Defendant did not respond to Plaintiff's third set of document requests until April 21, 2021. By moving to compel with regard to those requests, Plaintiff has violated Local Rule 37-1. The Court therefore will not address that portion of Plaintiff's motion. The Court hopes that the instant ruling will assist the parties in resolving any remaining disputes regarding these requests, but to the extent that they are unable to reach a resolution, Plaintiff shall, as

---

[10] The Court notes that Plaintiff has requested some of this information in other document requests. *See, e.g.*, Document Request No. 27 (seeking "[a]ny documents which relate to whether or not your ID Theft Policies and Procedures were appropriate to the nature, size, complexity, and scope of your activities in 2019 and 2020"); Document Request No. 32 (seeking, *inter alia*, "[a]ny records which existed as of July 2020 of any periodic evaluation of your own practices"). The Court expresses no opinion with regard to these requests, other than to reiterate that the Court will not sustain an objection based on undue burden or proportionality in the absence of specific information regarding what the burden of production would be.

required by Local Rule 37-1, contact the undersigned to request a discovery conference prior to filing a motion to compel.

To further assist the parties in resolving their remaining disputes, the Court notes that the proper response to an overly broad discovery request is to produce any responsive documents to which the requesting party is clearly entitled, explain the scope of that production, and then state unequivocally that additional responsive documents are being withheld based on the overbreadth objection. For example, if a document request is overbroad because it encompasses ten years and the producing party believes a three-year period is appropriate, the producing party should produce the responsive documents for those three years and state that it is not producing responsive documents for the remaining seven years. In other words, the receipt of an overly broad discovery request is not a free pass that excuses a party from producing information that is indisputably relevant.

## IV. Conclusion

Plaintiff's Motion to Compel and for Order Imposing Sanctions [Dkt. 88] is **GRANTED** as to Document Request No. 1 and **DENIED** in all other respects. Defendant shall respond fully and completely to Document Request No. 1 **within 14 days of the date of this Order**. The Court finds that neither party is entitled to an award of fees related to the instant motion. *See* Federal Rule of Civil Procedure 37(a)(5)(C) (giving court discretion with regard to apportioning fees when discovery motion is granted in part and denied in part).

SO ORDERED.

Dated: 26 AUG 2021

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.